Commonwealth of Pennsylvania ex rel. W. P. Bigley and Sarah E. Bigley *v.* Hon. Thomas Ewing, Hon. J. W. F. White and Hon. Christopher Magee, Judges of the Court of Common Pleas No. 2, of Allegheny County.

*Appeals—Practice, C. P.—Security—Supersedeas—Equity—Controversy over real estate—Discretion of court—Act of March* 17, 1845.

Where in an equity proceeding it appears from the pleadings, proofs and decree that the controversy is about the possession of real property, and the effect of the decree is to oust the defendants from what the court finds to be a defiant and wrongful possession of the realty, and to cause a redelivery of such possession to plaintiffs, the court may in the exercise of its proper discretion require the defendants to enter security as provided by the act of March 17, 1845, as a condition of staying the execution of the decree pending the defendants' appeal to the Supreme Court.

The plaintiffs in a bill in equity prayed that the defendants in the bill should be restrained from maintaining a flatboat of large dimensions at the river front of their lot, and from otherwise obstructing the water front. The defendants in the bill denied the riparian right of plaintiffs. The court of common pleas found that the plaintiffs had the exclusive right to the river front, and that the defendants had excluded them from the enjoyment of this right. Defendants appealed, but the court required that before defendants' appeal should operate as a supersedeas, they should enter security for $2,000 conditioned for payment of damages as well as costs. The defendants who are the relators in this proceeding presented a petition to the Supreme Court praying for a mandamus to the courts below to direct the approval of a bond for costs only. The court below in answer to an alternative mandamus stated as a reason for enlarging the penalty in the bond that defendants persisted in continuing the nuisance. *Held,*

(1) that the case involved a controversy over real estate, and came under the fourth condition of the act of March 17, 1845; (2) that the court properly exercised its discretion in requiring a bond for damages as well as costs; (3) that if the court below had directed the condition of the bond to be for " the value of the use and occupation " by defendants of plaintiffs' property pending the appeal, as is the language of the act, as well as for costs, it would have expressed only the same thought as " damages " to plaintiffs from the possession by defendants of the property during the same interval.

Argued May 1, 1896.  Petition for mandamus.  Miscellaneous Docket No. 1, No. 245.  Before GREEN, WILLIAMS, MC-COLLUM, DEAN and FELL, JJ.

Petition for mandamus.

The material portion of the pleadings appear by the opinion of the Supreme Court.

*Alex. Simpson, Jr.*, with him *A. H. Mercer* and *S. S. Robertson*, for petitioners.—No action for damages can hereafter be maintained for anything occurring prior to bill filed, and included, or that might have been included in the subject-matter of the litigation.

Matters not included in the litigation cannot be considered here.

The appeal being from the decree entered, the right thereto and the conditions on which that right is to be exercised can only be determined by a consideration of the decree itself, and the law appertaining to appeals from such a decree, and cannot be abridged by matters dehors the decree, in the absence at least of an estoppel.

*J. J. Miller*, with him *Shiras & Dickey*, for respondent.— The strict letter of the act of 1845 would indicate that security was required only for costs, but this act has been construed by this court in a number of cases, and the doctrine has been affirmatively settled that the court below has the power to exercise its discretion as to the conditions and amount of the security: Chew's App., 9 W. & S. 151; Com. v. The Judges, 10 Pa. 37; Koch's Est., 4 R. 268; Com. v. Orphans' Court of Phila., 102 Pa. 230; Com. v. Wistar, 142 Pa. 373; Act of April 21, 1846, P. L. 433; Barker v. Hartman Steel Co., 23 W. N. C. 109.

In the English chancery practice the question whether an appeal shall stay proceedings rests much in the discretion of the tribunal from which the appeal is taken; and it is common to make special application to that tribunal to stay further proceedings. The court then prescribes the terms upon which proceedings will be stayed: Barrs v. Fawkes, L. R. 1 Eq. 382; Harrington v. Harrington, L. R. 3 Ch. App., 575.

The Supreme Court of the United States in the Slaughter House Cases, 10 Wall. 273, held that an appeal to the Supreme Court of the United States did not suspend a decree made by the Supreme Court of a state, and that such suspension depended upon the discretion of the state court.

In England no appeal from a decree of the court of chancery is a supersedeas unless specially allowed so to be: Leonard v. Ozark Land Co., 115 U. S. 465; Hovey v. McDonald, 109 U. S. 150; Hart v. Mayor of Albany, 3 Paige, 381.

It will not lie to compel a court of inferior jurisdiction to decide a case in a particular way: Com. v. Judges, 3 Binn. 273; Johnson's License, 165 Pa. 324; Dechert v. Com., 113 Pa. 229.

If a judge declines to hear or delays a hearing unreasonably, a mandamus is the appropriate remedy: Newlin v. County, 23 W. N. C. 153; Petition of Collarn, 134 Pa. 551; Wolff's Petition, 138 Pa. 316; Goldman's Petition, 138 Pa. 321; McNulty's Petition, 142 Pa. 475; Ostertag's Petition, 144 Pa. 426.

OPINION BY MR. JUSTICE DEAN, July 15, 1896:

S. Jarvis Adams filed a bill in equity in the court below against these relators and others, doing business as the Ireland Sand Company, as defendants, in which he averred he was the owner of a lot in the Ninth ward of the city of Pittsburg, fronting on the Allegheny river two hundred and three feet, and that as riparian owner, he was entitled to the unobstructed frontage, subject to the rights of the commonwealth and the United States on the river; that he was an iron manufacturer, and the frontage was valuable to him as a boat landing; that defendants, without authority, persisted in maintaining a flatboat of large dimensions at the river front of his lot, and had attached the same to his land; that to this flatboat, defendants moored large barges loaded with sand, manure and other freight-

age, which in conducting their business they load and unload, thus obstructing him in access to the water from his lot, and causing him great damage; he therefore prayed that defendants be enjoined from so occupying and using the water frontage of his lot.

To this, defendants answered, in substance, denying the riparian right of plaintiff by reason of his ownership of the lot, but admitting that Sarah Bigley, one of the defendants, occupied the river front and transacted business thereon without authority from plaintiff, and averring that he, having no right, could exact no rental; and further averring, the use made by Sarah Bigley of the water front was lawful.

The Shoenberger Steel Company, claiming to own eight hundred feet on the river, also filed a bill against the same defendants, setting out the same complaint, and praying for like relief, to which the same answer was filed.

The case came on for hearing before Judge EWING in the court below, sitting in equity, who found in favor of plaintiffs both as to the facts and law. Accordingly, on the 23d of December, 1895, it was decreed that W. P. Bigley and Sarah E. Bigley, two of defendants, and these relator plaintiffs, be required to remove the flatboat within sixty days, and further, be enjoined from maintaining the same in front of the lots.

On the 10th of January, 1896, before the expiration of the sixty days, the defendants, against whom the decree was entered, filed præcipe for appeal to this court, entering recognizance in each case with good sureties in sum of $500, conditioned for payment of costs only, with proper affidavit. The next day, the recognizances were tendered to Judge WHITE for approval; he refused to approve them, but directed, that before defendant's appeal should operate as a supersedeas, they should enter into recognizance in sum of $2,000, conditioned for payment of damages as well as costs, and stating, apparently, as the reason for enlarging the penalty in the bond, that defendants persisted in continuing the nuisance.

The defendants then presented their petition to this court, averring a belief in their right to an appeal on giving bond for costs, and alleging it to be the duty of the judge to approve the same in the form tendered, and praying for mandamus to the judges of the court below, these respondents, directing the

approval of the $500 recognizances. On the 12th of February, 1896, we awarded an alternative mandamus. To this, return was made by Judge WHITE, in part as follows :

"At the trial of said cases, it was clearly proved that the plaintiffs in the two cases had large iron establishments on the banks of the Allegheny river, with titles extending to said river; Adams on the lower side of a street running to the river, and the steel company on the upper side, their lands abutting on the street; that the defendants had a large float or flatboat, opposite the mouth of the street, and extending a considerable distance above and below, in front of plaintiffs' properties; that this float was fastened to stakes in the banks of the plaintiffs' properties, and had a board passageway to the street, used by teams for hauling coal, sand, and other materials to and from the float; that they had an office on said float, and also stable or shed where they kept their horses or mules ; that in addition to the float, the defendants had always barges or boats tied to their float, bringing and taking away material, and these always seriously interfered with the plaintiffs' land, and sometimes entirely obstructed the landing in front of plaintiffs' properties, and entirely at all times prevented them from any landing at the street ; that the defendants for some years had used their float and barges as a regular place of business for delivering coal and sand in the city, and for collecting and shipping manure, and greatly to the injury of the plaintiffs in their business. One great source of damage was the accumulation of river drift at the float, which obstructed the influent pipes to plaintiffs' works, causing delay and expense, and which, if continued might stop the works for awhile, most disastrously to plaintiffs' business. . . .

"When the bonds were presented in court for approval, the defendants' counsel stated they would not remove the obstructions, but would continue the business and resist the plaintiffs' claim so long as it was possible to litigate it.

"If bail for costs will be a supersedeas, the defendants will continue the obstructions to the great damage of the plaintiffs. They may entirely exclude the plaintiffs from all access to the river. And in the end, when damages shall be assessed, the plaintiffs in all likelihood will not be able to recover one cent.

"Under these facts and circumstances, I thought the defend-

ants should give bail for more than the costs, enough at least to cover the probable damages the plaintiff would suffer from a continuance of the obstructions. If I was wrong in this, on an intimation to that effect from the Supreme Court, the bonds heretofore presented will be at once approved."

To this return, the petitioners demurred, as insufficient for a number of reasons, but the only one which we deem it necessary to notice is the sixth, as follows:

" Because nothing in said return contained excuses respondents from the legal duty of approving the bonds offered on the appeals in view of the admitted facts that they were ample in amount and proper in character to cover all costs which had accrued and were likely to accrue in said causes."

The other reasons involve dispute as to the facts, and their sufficiency to move the discretion of the judge in determining the form and substance of his decree.

If the discretion was reposed in him by law to exact a recognizance greater in amount than $500, and which should embrace damages as well as costs, a gross abuse of that discretion, of which here there is not the semblance, would have to be manifest before we would inquire into it.

The only question, is whether the learned judge of the court below was mistaken as to his power to enlarge the penalty in the bond so as to cover damages.

The right of plaintiffs in the equity cases, both by bill, answer and proofs, turned wholly on the extent of their riparian rights as owners of the lots to which defendants moored their flatboat. The court found as facts : There was no street along the river between the river and the lots ; that Fourteenth street is forty feet wide, and led to the river between the lot of Adams on one side and the Shoenberger Steel Company on the other ; that defendants' boat was one hundred and seventy feet long, and extended across the street and along the front of each property, and by so placing it the plaintiffs were deprived of the possession and enjoyment of their lots ; that they had, as riparian owners of these lots, and as against defendants, the exclusive right to such possession. Clearly, the subject of litigation was the right to real property. We do not, in this proceeding, pass on the finding of facts by the learned judge of the court below, nor do we review his conclusions of law ; the time for that is

on the hearing of the appeal.   What we do determine, is, that manifestly from the pleadings, proofs and decree, the controversy was over the possession of real property.   The effect of the execution of the decree is to oust these defendants from what the court found to be a defiant, wrongful possession of this realty, and to cause a redelivery of such possession to plaintiffs.   The petitioners ask that this order be stayed pending the appeal; their case then comes under the fourth condition of the act of 17th of March, 1845.   That condition reads thus:

"4. If the decree or order appealed from direct the sale or delivery of the possession of any real property, the issuing and execution of process to enforce the same, shall not be stayed until a bond be given with sureties as hereinbefore directed, in such penalty as the court of common pleas shall deem sufficient; conditioned that during the possession of such real property by such appellant, he will not commit or suffer any waste to be committed thereon; and in case such appeal be dismissed or discontinued, or such order or decree be affirmed, such appellant will pay the value of the use and occupation of such property, from the time of such appeal, until the delivery of the possession thereof, pursuant to such order or decree."

The reasons given for exacting the additional amount, by the learned judge of the court below, as heretofore quoted, are covered by the words of this condition; therefore he did not exceed the power the act conferred.   If he had directed the condition of the bond to be for the value and occupation by defendants of plaintiffs' property pending the appeal, as is the language of the act, as well as for costs, it would only have expressed the same thought as "damages" to plaintiffs from the possession by defendants of the property during the same interval.

The demurrer is overruled, and the judgment entered for respondents.